FILED
2017 Jul-27  AM 09:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| **CYNTHIA TIDMORE WILDER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 4:16-cv-00500-JEO** |
| ) | |
| **NANCY A. BERRYHILL,** ) | |
| **Acting Commissioner of** ) | |
| **Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

Plaintiff Cynthia Tidmore Wilder brings this action pursuant to 42 U.S.C. §

405(g), seeking review of the final decision of the Acting Commissioner of Social

Security ("Commissioner")[1] denying her application for disability insurance

benefits.  (Doc.[2] 1). The case has been assigned to the undersigned United States

Magistrate Judge pursuant to this court's general order of reference.  The parties

have consented to the jurisdiction of this court for disposition of the matter.  (Doc.

---

[1] Nancy A. Berryhill was named the Acting Commissioner on January 23, 2017. See
https://www.ssa.gov/agency/commissioner.html. Under 42 U.S.C. § 405(g), "[a]ny action
instituted in accordance with this subsection shall survive notwithstanding any change in the
person occupying the office of Commissioner of Social Security or any vacancy in such office."
Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil
Procedure, the Court has substituted Nancy A. Berryhill for Carolyn W. Colvin in the case
caption above and **HEREBY DIRECTS** the clerk to do the same party substitution on CM/ECF.

[2] References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the
Court to the pleadings, motions, and other materials in the court file, as reflected on the docket
sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.

12).  Upon review of the record and the relevant law, the undersigned finds that the Commissioner's decision is due to be affirmed.

## I.  PROCEDURAL HISTORY

In December 2012, Wilder filed an application for a period of disability and disability insurance benefits, alleging disability beginning December 23, 2011. (R.[3] 19, 164).  Her application was denied initially.  (R. 19).  Wilder then requested a hearing before an Administrative Law Judge ("ALJ").  (R. 19).  The hearing was held on June 9, 2014.  (R. 19).  Wilder, her counsel, and a vocational expert attended the hearing.  (R. 19).  At the hearing, Wilder, acting through her counsel, amended her disability onset date to May 16, 2012.  (R. 19, 37).  The ALJ issued a decision on September 12, 2014, finding that Wilder was not entitled to benefits. (R. 19-29).  The Appeals Council denied Wilder's request for review on January 29, 2016.  (R. 1-4).  Wilder then filed this action for judicial review under 42 U.S.C. § 405(g).  (Doc. 1).

## II.  STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed.  The function of the court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal

---

[3] References herein to "R. __" are to the page number of the administrative record, which is located at Docs. 7-1 through 7-8.

standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

The court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability insurance benefits under the Social Security Act, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); 42

U.S.C. § 416(i).  A physical or mental impairment is "an impairment that results

from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic

techniques."  42 U.S.C. § 423(d)(3).  To be eligible for disability insurance

benefits, a claimant must demonstrate disability on or before the last date she was

insured.  *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing 42

U.S.C. § 423(a)(1)(A)).

Determination of disability under the Social Security Act requires a five step

analysis.  20 C.F.R. § 404.1520(a).  Specifically, the Commissioner must

determine in sequence:

> whether the claimant: (1) is unable to engage in substantial gainful
> activity; (2) has a severe medically determinable physical or mental
> impairment; (3) has such an impairment that meets or equals a Listing
> and meets the duration requirements; (4) can perform [her] past
> relevant work, in light of [her] residual functional capacity; and (5)
> can make an adjustment to other work, in light of [her] residual
> functional capacity, age, education, and work experience.

*Evans v. Comm'r of Soc. Sec.*, 551 F. App'x 521, 524 (11th Cir. 2014) (citing 20

C.F.R. § 404.1520(a)(4)).[4]  The claimant bears the burden of proving that she was

disabled within the meaning of the Social Security Act.  *Moore*, 405 F.3d at 1211.

---

[4] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding
precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

The applicable "regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Id.*

## IV.  FINDINGS OF THE ALJ

Wilder was 52 years old at the time of her hearing before the ALJ.  (R. 37). She has a high school education, but does not possess a diploma, and has past work experience in the fast food industry and performing general labor in a warehouse. (R. 25, 39, 198).  She alleged in her disability report that she had been unable to work since October 20, 2010, due to degenerative disc disease and curvature of the spine.  (R. 197).  She was insured for Social Security disability insurance benefits through December 31, 2014.  (R. 21).

At her administrative hearing, Wilder testified that she was unable to work during the relevant period due to spinal scoliosis and degenerative disc disease. She further testified that she experiences shooting pain in her leg, back and arm. (R. 41).

The ALJ found that Wilder had severe impairments of degenerative disc disease, mild scoliosis, and degenerative joint disease.  (R. 21).  The ALJ further found that Wilder's impairments did not meet or medically equally any listed impairments.  (R. 24).  The ALJ found that Wilder had the residual functional capacity ("RFC") to perform light, unskilled work with the following restrictions:

no climbing; no work at unprotected heights; no more than occasional stooping

crouching, or crawling; no more than frequent handling bilaterally; and no more

than frequent interaction with co-workers, supervisors, or the general public.[5]  (R.

25).

Based on the testimony of the vocational expert, the ALJ found that Wilder

could not perform her past relevant work.  (R. 27-28).  He further found, however,

that Wilder was capable of performing a number of other jobs that exist in

significant numbers in the national economy, including marker, inspector/hand

packager, and office helper.  (R. 28-29).  The ALJ concluded that Wilder was not

under a disability at any time from her alleged onset date of May 16, 2012, through

the date of the decision.  (R. 29).

## V.  DISCUSSION

Wilder argues that the Commissioner's decision should be reversed and

remanded because the ALJ failed to properly evaluate the credibility of her

complaints of pain and failed to articulate good cause for according less weight to

the opinions of her treating physician.  (Doc. 9 at 4-12).  The Commissioner

responds that the decision of the ALJ is supported by substantial evidence.  (Doc.

10 at 3-10).

---

[5] Residual functional capacity is the most a claimant can do despite her impairment(s). *See* 20
C.F.R. §404.1545(a)(1).

## A.   Complaints of Pain

To establish a disability based on subjective testimony of pain and other symptoms, a claimant must establish "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (2) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).  If the ALJ discredits a claimant's subjective testimony regarding pain, the ALJ must articulate "explicit and adequate reasons for doing so." *Id.*  "[T]he ALJ need not cite to 'particular phrases or formulations' to support the credibility determination, … [but] must do more than merely reject the claimant's testimony, such that the decision provides a reviewing court a basis to conclude that the ALJ considered the claimant's medical condition as a whole." *Mijenes v. Comm'r of Soc. Sec.*, -- F. App'x -- , 2017 WL 1735236, * 5 (May 3, 2017) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotations omitted)).

As noted previously, the ALJ found that Wilder suffers from three severe impairments: degenerative disc disease, mild scoliosis, and degenerative joint disease.  The ALJ determined that these impairments could reasonably be expected to cause Wilder's alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely

credible.  (R. 26).  Wilder contends that the ALJ's reasons for refusing to fully credit her subjective testimony are not supported by substantial evidence.  (Doc. 9 at 5).  She raises two primary challenges to the ALJ's credibility determination. First, Wilder argues that the ALJ "determined that the level of pain and limitations alleged by [her] was not supported by the objective medical evidence" and that in making his determination, the ALJ did not properly consider "the objective evidence as well as the longitudinal treatment record." (*Id*.)  Instead, she argues, the ALJ "relies upon isolated notations in the record to support his finding." (*Id*. at 7).  Within this argument, Wilder asserts that the objective evidence and her medical record support both her allegations of debilitating pain and her limitations. (*Id*. at 5-10).

In support of her contention, Wilder cites to her testimony from the administrative hearing.  She testified at the hearing that she is unable to lift more than five pounds; she spends her day on the couch and doing some dishes; she goes outside "every now and then" and walks to her mailbox; she cannot sit or stand for very long without hurting; she can sit for 30 minutes to an hour at one time and stand for maybe one to two hours at one time; and she spends approximately six hours during the day in her recliner. (R. 41-46).

### 1.    The Medical Evidence

In December 2009, Wilder visited Dr. Stephen F. Blackstock, complaining of low back pain she had been experiencing for three months.  (R. 303).  X-rays demonstrated degenerative disc disease.   Dr. Blackstock prescribed anti-inflammatories and muscle relaxers.  (*Id*.)  An MRI of her lumbar spine dated May 18, 2010, showed "diffuse degenerative disc disease of the lumbar spine," "essentially [a] complete collapse of the L1 intervertebral disc," "herniated L4 disc," "significant broad based disc bulging at L5," and mild stenosis at L2 and L3."  (R. 300).

Wilder was referred to a neurosurgeon.  (R. 250).  On October 24, 2011, Dr. William Woodall, a neurosurgeon, noted no weakness or tenderness of the spine and normal range of motion of all extremities.  (R. 237-242).  Dr. Woodall diagnosed Wilder as experiencing back pain with radiculopathy.  He prescribed Lysine, Ultram and over-the-counter Ibuprofen.  (R. 242).

Wilder underwent another MRI of her lumbar spine on November 7, 2011, which documented disc space narrowing at L1-2 with a moderate bulge and disc bulges left paracentral L4-L5 and L5-S1, but no obvious root compression or evidence of anything on the right.  (R. 235, 244-245).  An x-ray of her lumbar spine on that same day documented L1-L2 mild degenerative retrolisthesis with severe discovertebral joint degenerative change, mild idiopathic curvature convex

to the left and mild discovertebral joint degenerative change. (R. 246). Dr. Woodall determined Wilder suffered from mild scoliosis and degenerative changes, but did not find any disc rupture or nerve pinching on the right. He further determined there was "no obvious surgical problem" and recommended physical therapy and a facet block at L4-5, L5-S1 if the pain did not improve. (R. 235).

On June 26, 2012, Wilder was treated by Dr. Vicente Torregosa for complaints of back pain and swelling/numbness in her hands. (R. 253-55). Wilder complained of tightness and discomfort in her spine. (R. 253). She stated she had "radicular pain when standing for long periods … [as well as] numbness in her hands." (*Id*.) Dr. Torregosa recommended aquatic exercise and smoking cessation. (R. 254-55). He prescribed Meclazine, Norco and Ibuprofen for Wilder. (R. 254-55).

On February 4, 2013, Dr. Zakir Khan examined Wilder. (R. 272-74). Dr. Khan noted tenderness in Wilder's lower thoracic spine, and pain with rotation of the hips. (R. 273). Wilder exhibited normal range of motion of her extremities, normal grip strength, and the ability to squat. (*Id*.) Dr. Khan also noted normal gait and an ability to tandem heel walk. (*Id*.) Dr. Khan diagnosed Wilder with gastroesophageal reflux disease and low back pain. (R. 274). He found that

Wilder could sit, stand, walk, lift, carry, handle objects, hear, speak, and travel, and had normal fine motor activity and dexterity in her hands.  (*Id.*)

On July 24, 2013, Dr. Pat Herrera began treating Wilder for complaints of anxiety and back pain.  (R. 286).  Dr. Herrera noted Wilder was experiencing a spasm of her lower back, and stated he had not reviewed an MRI.  (*Id.*)  He diagnosed Wilder as experiencing back pain, degenerative joint disease, insomnia, and anxiety.  (*Id.*)  He reported her pain at a level 5 on a 10-point scale.  (*Id.*)  On August 7, 2013, Wilder's pain was rate as a level 5 during her office visit.  (R. 283).  On August 23, 2013, an x-ray of Wilder's lumbar spine revealed "minor" scoliosis with degenerative disc and facet disease.  (R. 282).  On September 6, 2013, Dr. Herrera noted that Wilder complained of severe back pain; however, he rated her pain at a level 5.  (R. 281).  His findings were normal except for noting a decreased range of motion ("ROM") of Wilder's lower back.  (*Id.*)  Wilder's pain level was recorded as a 7 during her October 7, 2013 office visit.  (R. 294).

On November 5, 2013, Dr. Herrera noted Wilder had a pain level of 6, but was "doing well" on her medication.  (R. 293).  On December 5, 2013, Dr. Herrera noted a pain level of 7.  (R. 292).  On January 2, 2014, Dr. Herrera examined Wilder and noted a pain level of 6.  (R. 291).  Dr. Herrera's only finding during this examination was a reduced ROM of the lower back.  (R. 291).  On January 2, 2014, Dr. Herrera completed a physical capacity evaluation indicating Wilder

could not perform even sedentary work.  (R. 288-89).  On a pain assessment form, Dr. Herrera indicated Wilder would experience a moderately severe level of pain, and would miss more than two days of work per month.  (R. 290).  On February 3, 2014, Dr. Herrera noted Wilder's pain level was 5 with "stable" findings.  (R. 309). On March 20, 2014, Dr. Herrera noted Wilder's pain level was 7 with "stable" findings.  (R. 308).  On April 17, 2014, he noted Wilder's pain level as 6 with "stable" findings.  (R. 307).  On May 15, 2014, he noted Wilder's pain level as 7 with "stable" findings.  (R. 306).

### 2.    Analysis

Wilder argues her longitudinal history of complaints and treatment for back pain demonstrates her disability.  Specifically, she points to her complaints of pain that date back to 2009 and continue to May 2014, her diagnosis of degenerative joint disease, and her consistent treatment with medication.  (Doc. 9 at 8-9).  She also argues that the ALJ's "reliance on the absence of a recommendation of surgery and isolated physical examinations to support his negative credibility finding is in error."  (*Id*. at 9).  She further highlights her hearing testimony as support for her position.  Wilder concludes that she is limited to work at the sedentary level of exertion, which given her age, education, and past experience,

leads to the conclusion that she is disabled.  (*Id*. at 10 (citing Medical Voc.

Guideline 201.14[6])).

The ALJ provided an extensive analysis of Wilder's testimony and the

medical evidence.  He stated:

> [Wilder] alleged in her Function Report that she has problems bending,
> standing, squatting, reaching, walking, sitting, kneeling, completing tasks,
> and climbing stairs (Exhibit 9E).  She alleged that she can only lift 5 pounds.
> As discussed above, [Wilder] alleged at the hearing that she can only sit for
> 30 minutes to an hour and can only stand for 1 hour.  She alleged that she
> has to spend 6 hours in an 8-hour day reclining on her couch.  However, the
> level of pain and limitation alleged by [Wilder] is not supported by the
> objective medical evidence in the record.  X-ray imaging from November
> 2011 showed only mild left convex rotoscoliosis and disc space narrowing
> and only marginal osteophyte at Ll -2 with instability in flexion and
> extension (Exhibit lF).  As discussed above, X-ray imaging from August
> 2013 showed only minor disc space loss and only moderate degenerative
> facet degenerative change at 5/ 1 (Exhibit 7F).  She only had minimal
> changes at 4/5 and minimal Sl joint sclerosis.  She was noted to have only
> minor scoliosis.  MRI results were also noted to show only a moderate bulge
> at Ll-2 and no obvious root compression (Exhibit lF).  Her MRI results were
> noted to show only mild scoliosis.
>
> Despite the severe pain and limitation alleged by [Wilder], the record
> indicates that only conservative treatment has been prescribed for [her] and
> no surgery was recommended (Exhibit lF).  When examined at Birmingham
> Neurosurgery and Spine Group in October 2011, she had no numbness,
> tingling, or weakness.  She was noted to have no spinal deformity or
> scoliosis.  Despite the limitations in walking and moving alleged by
> [Wilder], she had a normal posture and gait.  She had normal heel and toe
> walking.  She also had a negative straight-leg raising test.  Dr. Khan also

---

[6] "**Guideline 201.14** provides that a person is disabled if she is limited to sedentary work, is
closely approaching advanced age, is a high school graduate or more, and her past relevant work
experience is skilled or semiskilled with skills that are not transferable.  20 C.F.R. § 404, Subpt.
P, App'x 2."  *Bull v. Colvin*, 2014 WL 692886, *7 (D.S.C. Feb. 21, 2014) (bold in original).

found that [she] has a normal gait as well as a normal heel and toe walk (Exhibit 5F). He reported that [Wilder] was able to squat without problems. Further, [she] had a normal range of motion over the lumbar spine and again had a negative straight leg-raising test bilaterally. Dr. Khan stated that [Wilder] demonstrates an ability to sit, stand, walk, lift, carry, and handle objects.

In addition, the record indicates that [Wilder's] back pain is effectively controlled by medication. When seen at Birmingham Neurosurgery and Spine Group in October 2011, she reported that she is typically able to tolerate her back pain. In November 2013, her neck and back pain were described as doing well on medication (Exhibit 8F). [Wilder] reported in her Function Report that she is able to clean, do her laundry, and prepare her own meals (Exhibit E). She testified that she is able to drive. The objective medical evidence and [Wilder's] reported activities of daily living do not support the level of limitation alleged by [her] and do not support a finding that [she] experiences symptoms so severe as to be disabling. The undersigned has accounted for [her] degenerative disk disease, mild scoliosis, and degenerative joint disease by limiting [her] to light work with no climbing of ropes, ladders, or scaffolds, no work at unprotected heights or with hazardous machinery, no more than occasional stooping, crouching, or crawling, and no more than frequent handling bilaterally.

Although the record does not support a finding that [Wilder's] arm and hand pain is a severe impairment, the undersigned has accounted for these impairments by limiting [her] to no climbing of ropes, ladders, or scaffolds, and no more than frequent handling bilaterally. The undersigned has also accounted for [her] nonsevere impairments of depression and anxiety by limiting her to unskilled work with no more than frequent interactions with co-workers, supervisors, or the general public.

(R. 26-27).

Wilder has failed to adequately challenge the foregoing findings of the ALJ.

While she complains that the ALJ relied upon "isolated notations in the record,"

the foregoing discredits that argument. The discussion is extensive and detailed.

Wilder has failed to show where the assessment is inaccurate or where it fails to

14

account for significant evidence. Thus, the court finds that the ALJ's determination is supported by substantial evidence.

### B.    Wilder's Treating Physicians

In her second claim, Wilder asserts that the ALJ failed to properly articulate good cause for according less weight to the opinion of her treating physician, Dr. Herrera, when he determined that she was not disabled.  (Doc. 9 at 10).  The Commissioner responds that the ALJ properly discounted the limitations noted in Dr. Herrera's physical capacity evaluation and pain assessment form.  (Doc. 10 at 8).

### 1.    Standard of Review

In assessing the weight to be given an acceptable medical source such as a physician, an ALJ is to consider numerous factors, including whether the physician examined the individual, whether the physician treated the individual, the evidence the physician presents to support his or her opinion, whether the physician's opinion is consistent with the record as a whole, and the physician's specialty.  *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).  A treating physician's opinion generally is entitled to more weight, and an ALJ must give good reasons for discounting a treating physician's opinion.  *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  This is particularly true when the treatment "has been over a considerable period of time."

*Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). "However, the nature of

the relationship between the doctor and the claimant is only one factor used to

determine the weight given to a medical opinion." *Chambers v. Astrue*, No. 1:11-

cv-02412-TWT-RGV, 2013 WL 486307, at *27 (N.D. Ga. Jan. 11, 2013) (citing

20 C.F.R. § 404.1527). An ALJ may discount a physician's opinion, including a

treating physician's opinion, when the opinion is conclusory, the physician fails to

provide objective medical evidence to support his or her opinion, the opinion is

inconsistent with the record as a whole, or the evidence otherwise supports a

contrary finding. *See* 20 C.F.R. §§ 404.1527(c)(3), (c)(4); *Crawford v. Comm'r of

Soc. Sec.*, 363 F.3d 1155, 1159-60 (11th Cir. 2004); *Phillips v. Barnhart*, 357 F.3d

1232, 1240-41 (11th Cir. 2004); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir.

1991).

### 2.    Analysis

As noted above, Dr. Herrera completed a physical capacity evaluation of

Wilder on January 2, 2014. Therein, he opined that Wilder could do the following:

sit for two hours, stand for one hour, and walk for one hour at "one time." (R.

288). He also stated that during an eight hour workday Wilder could sit for a total

of four hours, stand for a total of three hours, and walk for a total of two hours.

(*Id.*) He further opined she could occasionally lift and carry up to 5 pounds. (R.

289). He also stated that she suffered from chronic, continuous moderately severe

pain which was objectively verified by X-rays and joint deformity.  (R. 290).

Finally, he opined Wilder would need frequent rest periods during the day to

relieve her pain and would likely miss two or more days of work per month.  (*Id.*)

Wilder argues that the ALJ erred when he afforded Dr. Herrera's opinion only little

weight.  (Doc. 9 at 11).  She asserts that the ALJ incorrectly found that (1) Dr.

Herrera's opinions are inconsistent with the objective findings of Dr. Khan and the

objective medical evidence in the record and (2) Dr. Herrera's opinion was "based

almost exclusively on [Wilder's] subjective complaints."  (*Id.* (citing R. 27)).

> The ALJ found as follows:
>
> The undersigned affords little weight to the opinions of Dr. Herrera found in
> his medical source statement (Exhibit 8F).  Dr. Herrera's opinions are not
> consistent with the objective findings of Dr. Khan discussed above or the
> objective medical evidence in the record including the MRI and
> X-ray imaging discussed above.  Dr. Herrera indicates that his opinions,
> including that [Wilder] is limited to sedentary work, are also based on [her]
> arm pain, hand pain, anxiety, and insomnia.  There are no objective findings
> from Dr. Herrera to support this opinion.  Dr. Herrera's opinion is based
> almost exclusively on [Wilder's] subjective complaints.  In addition, as
> discussed above, Dr. Khan found [Wilder] to have a normal range of motion
> in her upper extremities and normal grip and dexterity (Exhibit 5F).  The
> undersigned also notes that Dr. Herrera is not a psychiatrist and that the
> record does not support a finding that [Wilder's] anxiety causes more than
> minimal work-related limitations as discussed above.

(R. 27).  This court finds that the ALJ properly discounted the limitations noted in

Dr. Herrera's physical capacity evaluation.  (R. 27, 288-290).  For instance, as just

quoted, the ALJ noted that the severity of the limitations identified by Dr. Herrera

was not consistent with the objective findings from Dr. Khan, the MRI requested

by Dr. Woodall, or some of Dr. Herrera's own objective findings.  (R. 27).

Beginning with Dr. Khan, the record shows that he (Khan) evaluated Wilder

on February 4, 2013, for a "disability determination examination" premised upon a

history of back pain.  (R. 272).  Wilder complained during the examination that her

pain was getting worse.  (*Id*.)  She told Dr. Kahn that she could walk

approximately 200 feet before her back starts to hurt.  She also stated that she

occasionally experiences numbness in her left arm and in her right leg, and cannot

sit or stand for extended periods of time.  (*Id*.)  She denied unilateral motor

weakness or sensory deficits.  (*Id*. at 273).  She had tenderness to palpation over

the lower thoracic spine and mild thoracic scoliosis.  (*Id*.)  She was noted to have a

normal range of motion over the lumbar spine and she had a negative straight leg-

raising test bilaterally.  (*Id*.)  The rotation of her hips elicited pain in the lower

back.  She had a normal range of motion in all joints tested in the upper and lower

extremities.  She was described as being able to squat without problems.  Her

dexterity and grip strength were noted to be normal.  (*Id*.)  She had an intact motor

and sensory exam in both her upper and lower extremities.  (*Id*.)  Her tandem heel

and toe walking and her gait were normal.  (*Id*.)  In pertinent part, she was assessed

with lower back pain.  (*Id*. at 274).  Dr. Khan also stated that Wilder demonstrated

an ability to sit, stand, walk, lift, carry, handle objects, hear, speak, and travel.  He

reported that her fine motor activity and dexterity in her hands is normal bilaterally. (*Id.*)  This assessment does not evidence an individual with debilitating infirmities.  Wilder does not demonstrate any particular failing in Dr. Khan's assessment other than to point out Dr. Herrera's "extensive treatment history" with her. (*See* Doc. 9 at 11-12).  Accordingly, the court will next examine Dr. Herrera's history with Wilder in assessing the ALJ's discounting of his opinions.

First, Dr. Herrera did not begin treating Wilder until July 2013.  (R. 286). Before that point, Wilder's treatment was intermittent, with visits occurring about once or twice a year.  Thereafter, Dr. Herrera saw Wilder monthly from July 2013 until May 2014.  During this period, he assessed Wilder with a range of pain levels from 5 to 7.  (R. 281, 283, 286, 291-294, 306-09).  Nothing in Dr. Herrera's notes significantly challenges the ALJ's decision to afford little weight to his opinions. Additionally, nothing therein challenges the observations and assessments by Dr. Khan.  Second, Wilder's last MRI was in November 2011.  (*See* R. 235, 244-26). Dr. Herrera did not review her previous MRIs, nor did he order a new one. Instead, he appears to have relied upon an x-ray that was ordered on August 23, 2013.  It showed "minor" scoliosis with degenerative disc and facet disease.  (R. 282).  In Wilder's subsequent office visit on September 6, 2013, Dr. Herrera continued her on her medications, including Lortab.  (R. 281, 297-98).  This does not support Wilder's challenge to the ALJ's evaluation of Dr. Herrera's opinions in

any substantial way.  Third, Dr. Herrera's records fail to show that Wilder should be limited to sedentary work premised on Wilder's complaints of arm pain, hand pain, anxiety, and insomnia.  Dr. Herrera's records do not demonstrate objective evidence of the limitations to the degree specified in his report.  Additionally, Dr. Kahn's examination and evaluation of Wilder demonstrated that she had a normal range of motion in her upper extremities and normal grip and dexterity.  (R. 272-74).  Still further, Dr. Herrera's reliance on Wilder's anxiety as a significant limiting factor is not supported by the record – particularly since he is not a psychiatrist or psychologist and no other records show this to be a debilitating factor.

The totality of the record supports the ALJ's finding that Wilder is not disabled.  Overall, her treatment has been relatively infrequent and conservative. She does well with her medication.  There have been no recommendations of invasive medical procedures.  The ALJ factored all Wilder's limitations into his RFC assessment.  Wilder has not adequately challenged the decision of the ALJ. The ALJ evaluated the medical evidence and correctly found that Wilder could perform light work with additional limitations.  (R. 21-27).

## CONCLUSION

For the reasons set forth above, the court finds that the decision of the Commissioner is due to be affirmed.  A separate order consistent with this opinion will be entered.

**DONE**, this the 27th day of July, 2017.

**JOHN E. OTT**
Chief United States Magistrate Judge